# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

CODY C.,                                    *

     Plaintiff,                             *

v.                                          *          Civil Action No. EA-24-3739

FRANK BISIGNANO,                            *
Commissioner of Social Security,[1]
                                            *

     Defendant.                             *

## MEMORANDUM OPINION

On December 26, 2024, Plaintiff Cody C. petitioned this Court to review the final decision of the Social Security Administration (SSA or Commissioner) denying his claims for benefits. ECF No. 1. This case was referred to a United States Magistrate Judge with the parties' consent.[2] 28 U.S.C. § 636; Local Rule 301.4 (D. Md. 2025). Pending before the Court is Plaintiff's appeal, which is fully briefed. ECF Nos. 10, 13. No hearing is necessary. Local Rule 105.6. This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, and for the reasons set forth below, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Opinion.

---

[1]  Plaintiff filed this case against Carolyn W. Colvin, the Acting Commissioner of Social Security, on December 26, 2024. ECF 1. On May 7, 2025, Frank J. Bisignano became the Commissioner. *See* https://perma.cc/NA2P-W24T (last visited Nov. 4, 2025). Accordingly, Commissioner Bisignano has been substituted as Defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

[2]  This case was reassigned to the undersigned on August 12, 2025.

## I.    BACKGROUND

### A.    Procedural History

In 2020, Plaintiff filed an application for Child's Disability Benefits and Supplemental Security Income Benefits under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. § 301 *et seq.*, alleging a disability onset date of August 1, 2017.[3]  ECF No. 10 at 1.  Plaintiff claims that he is disabled within the meaning of the Social Security Act because he is unable to work due to lumbar spine disease, bilateral knee arthritis, bilateral foot neuropathy, shoulder problems, a history of multiple concussions, anxiety, and learning difficulties.  *Id.* (citing ECF Nos. 8-4 at 2–3; 8-7 at 11); *see also* ECF No. 8-4 at 30, 55.

The SSA initially denied Plaintiff's applications for benefits on August 20, 2021.  ECF No. 8-5 at 3, 8.  On October 19, 2021, Plaintiff filed for reconsideration, and the SSA affirmed its initial determination.  ECF No. 8-4 at 43–44, 68–69.  On January 11, 2023, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on January 26, 2024.  ECF Nos. 8-3 at 2; 8-5 at 15, 71, 79, 90, 92.  The ALJ rendered a decision on March 29, 2024, in which the ALJ denied Plaintiff's claims.  ECF No. 8-3 at 12–31.  On April 8, 2024, Plaintiff requested a review of the ALJ's decision, and on October 24, 2024, the Appeals Council affirmed the ALJ's decision.  ECF Nos. 8-3 at 6; 8-5 at 94.  The ALJ's March 29, 2024 decision therefore constitutes the final, reviewable decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

---

[3]  Plaintiff's applications for benefits are not included in the administrative record.  ECF No. 10 at 1 n.1.

Page numbers with "ECF No." refer to the pagination of the Court's CM/ECF system printed at the top of the cited document.

### B.    Statutory Framework

The Social Security Act authorizes disability insurance benefit payments to every insured individual who "is under a disability." *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). Disability insurance benefits are also available to an adult child with a disability based "on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died" if the claimant is "18 years old or older and ha[s] a disability that began before [the claimant] became 22 years old." 20 C.F.R. §§ 404.350(a), (a)(5). "In the context of determining eligibility for [an] adult child's [disability] benefits, the term 'disability' has substantially the same definition as it does in traditional, adult disability cases." *Michael T.* v. *O'Malley*, Civil Action No. CDA-23-1113, 2024 WL 1971734, *2 (D. Md. May 2, 2024) (internal citations and quotation marks omitted).

Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, "the

burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)).

If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Residual functional capacity is defined as "the most you can still do despite your [physical and mental] limitations." 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636 (quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)). "Only after such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms of the exertional levels of work.'" *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636). The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Monroe*, 826 F.3d at 179.

### C.    The ALJ's Decision

The ALJ initially determined as a threshold matter that the claimant was not yet 22 years old on the alleged disability onset date. ECF No. 8-3 at 18; *see also* 20 C.F.R. § 404.350(a)(5). At step one of the five-step sequential disability evaluation, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged disability onset date. ECF No. 8-3 at

18 (emphasis omitted). At step two, the ALJ found that the Plaintiff suffered from the severe impairments of "degenerative disc disease of the spine with radiculopathy, borderline intelligence disorder, specific learning disorder in mathematics, and anxiety disorder." *Id.* (emphasis omitted). At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 19 (emphasis omitted). Before continuing to the fourth step of the sequential evaluation, the ALJ determined that Plaintiff retained the residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to standing/walking for 4 hours in an 8-hour workday. He can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl, and frequently balance. He is limited to simple, routine, and repetitive tasks for periods of two hours at a time before needing a break. Time off-task can be accommodated by normal breaks. He is unable to perform high-quota production rate pace jobs where the workers must meet strict, hourly quotas.

*Id.* at 21 (emphasis omitted). At the fourth step, the ALJ determined that Plaintiff had no past relevant work. *Id.* at 25 (emphasis omitted). Lastly, at the fifth step, the ALJ determined that because there are jobs that exist in the national economy that Plaintiff can perform, Plaintiff had not been "under a disability, as defined in the Social Security Act," and the SSA properly denied his application for benefits. *Id.* at 25–26 (emphasis omitted).

## II.    DISCUSSION

On appeal, Plaintiff contends that the ALJ erroneously assessed (1) medical opinion evidence, (2) Plaintiff's subjective statements, and (3) Plaintiff's residual functional capacity, and (4) improperly relied upon the testimony of the vocational expert. ECF No. 10 at 3–28. The Commissioner contends the opposite. ECF No. 13 at 6–26. Following explanation of the applicable standard of review, each of Plaintiff's arguments is addressed in turn below.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)). The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman* v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019). Under this standard of review, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion."). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642. The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *Mascio*, 780 F.3d at

636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015).  Rather, an

administrative decision's reasoning need only be "reasonably discernible."  *Garland* v. *Ming*

*Dai*, 593 U.S. 357, 369 (2021).  "Meaningful review is frustrated—and remand necessary—only

where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record."

*Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

### B.    Medical Opinions[4]

An ALJ "must follow certain procedures when assessing the weight to which medical

opinions are entitled" and "articulate . . . how persuasive [the ALJ] finds each medical opinion."

*Adrianna S.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-20-3136, 2022 WL

112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. §§ 404.1520c, 404.1520c(b)).  The

implementing regulations identify a series of factors that the SSA must consider when assessing

medical opinions.  20 C.F.R. §§ 404.1520c(c), 416.920c.  Among those factors, "[s]upportability

and consistency are the most important factors when considering the persuasiveness of medical

opinions."  *Adrianna S.*, 2922 WL 112034, at *1; *see also* 20 C.F.R. §§ 404.1520c(b)(2);

416.920c(b)(2).  "Strictly speaking, 'supportability' concerns an opinion's reference to

diagnostic techniques, data collection procedures/analysis, and other objective medical

evidence."  *Carlos F.* v. *Kijakazi*, Civil Action No. BAH-22-2049, 2023 WL 3293086, at *3 (D.

Md. May 5, 2023) (internal quotation marks and citation omitted); *see also Adrianna S.*, 2022

WL 112034, at *1 ("Supportability generally refers to 'the objective medical evidence and

supporting explanations provided by a medical source.'") (quoting 20 C.F.R. § 404.1520c(c)(1)).

"In assessing consistency, the ALJ looks to the degree of cohesion between the medical opinion

and 'the evidence from other medical sources and nonmedical sources in the claim.'"  *Andrew P.*

---

[4]  Plaintiff's argument regarding the ALJ's evaluation of medical opinion evidence is embedded within his residual functional capacity argument.  ECF No. 10 at 16–18.  For greater clarity, the undersigned addresses this argument separately.

v. *O'Malley*, Civil Action No. CDA-23-2443, 2024 WL 4288063, at *3 (D. Md. Sept. 25, 2024) (quoting *Adrianna S.*, 2022 WL 112034, at *1); *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The more consistent a medical opinion is with the other evidence, the more persuasive that medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Adrianna S.*, 2022 WL 112034, at *1. "Supportability and consistency 'must be considered independently.'" *Antwoin W.* v. *Dudek*, Civil Action No. CDA-24-75, 2025 WL 949410, at *3 (D. Md. Mar. 28, 2025) (quoting *Carlos F.*, 2023 WL 3293086, at *3).

Remand is warranted when an ALJ fails to properly consider the supportability and consistency of a medical opinion. *E.g.*, *Lauren P.* v. *Dudek*, Civil Action No. SAG-24-0480, 2025 WL 754522, at *5 (D. Md. Mar. 10, 2025) (collecting cases). Accordingly, an ALJ must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). This explanation must include reference to specific evidence in the record. *Shelley C.* v. *Commissioner of Soc. Sec. Admin.*, 61 F.4th 341, 358 (4th Cir. 2023). The United States Court of Appeals for the Fourth Circuit has held that "where an ALJ fails to specify which specific objective evidence supports [the ALJ's] conclusion, that analysis is incomplete and precludes meaningful review." *Id.*; *see also Stephen R.* v. *O'Malley*, No. 21-2292, 2024 WL 3508155, at *4 (4th Cir. 2024) (finding that the ALJ's decision was not supported by substantial evidence where the ALJ engaged in conclusory analysis of the supportability and consistency factors but did not "reference or describe" the supporting evidence). Additionally, when the record contains evidence that contradicts an ALJ's conclusion, the ALJ's failure to analyze such evidence and explain the basis for its rejection also precludes meaningful review. *E.g.*, *Selina M.* v. *Kijakazi*, Civil Action No. GLS-21-2943, 2023 WL 2034292, at *5 (D. Md. Feb. 16, 2023); *see also Stephen R.*, 2024 WL 3508155, at *4 ("[W]hen the ALJ's decision suggests that [they] selectively examined the record

and ignored countervailing evidence or that [they] mischaracterized the facts to buttress [ ] conclusions, that decision is not supported by substantial evidence.") (internal citations omitted).

Plaintiff argues that the ALJ failed to properly conduct the required supportability and consistency analyses of the 2022 and 2023 medical opinions of Donnell James, PA-C.[5]  ECF No. 10 at 16–18; *see also* ECF Nos. 8-8 at 427; 8-9 at 8–9.  The Commissioner contends that although the ALJ did not use the word "supportability" in his analysis of the medical opinion, the ALJ "very clearly discussed the extent that the medical source presented 'relevant objective medical evidence and . . . explanation' that supports the medical opinion."  ECF No. 13 at 12 (quoting 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).  The Commissioner further argues that the ALJ addressed "consistency" in detailing how PA-C James' medical opinions were inconsistent with Plaintiff's activities of daily living and the objective imaging in the record.  *Id.*

PA-C James' 2022 opinion states, in relevant part, that Plaintiff "has a history of Chronic Lumbar Spondylosis[,] . . . a degenerative condition of his lumbar spine which causes extreme back pain.  Due to this condition[,] he is not able to sit for more than 4 hours because it is aggravating his back pain."  ECF No. 8-8 at 427.  When assessing the supportability factor, the ALJ found PA-C James' 2022 opinion unpersuasive because it was not supported by objective medical evidence and was inconsistent with Plaintiff's testimony and his reports to pain management providers.  ECF No. 8-3 at 24.  This Court has found an ALJ's supportability and consistency analyses sufficient where the ALJ considered the provider's diagnostic and examination techniques and compared the medical opinion to other pieces of evidence in the record and provided specific citations to such evidence.  *E.g.*, *Myra S.* v. *Kijakazi*, Civil Action No. BAH-22-02588, 2023 WL 5938741, at *3 (D. Md. Sept. 12, 2023).

---

[5]  "PA-C" is an abbreviation for physician assistant, certified.  "Pac." Merriam-Webster.com Dictionary, Merriam-Webster, https://perma.cc/JZ97-L6ZL (last accessed Nov. 4, 2025).

Here, the ALJ adequately evaluated the supportability of PA-C James' 2022 opinion, noting that it did not cite to and was not supported by objective imaging, which "show[ed] only mild degenerative and spondylosis findings." ECF No. 8-3 at 24 (citing ECF No. 8-8 at 61, 358). The ALJ also adequately addressed the 2022 opinion's consistency by comparing it to the claimant's other medical evidence and noting "while longitudinal records from [PA-C] James reflect complaints of low back and lower extremity pain and dysfunction, the claimant has reported to pain management providers that pain is improved with sitting down, which is inconsistent with this assessment." ECF No. 8-3 at 24 (citing ECF No. 8-8 at 373–395, 494–542). *Compare* ECF No. 8-8 at 427 (Plaintiff is "not able to sit for more than 4 hours because it is aggravating his back pain") *with* ECF No. 8-7 at 48 ("Because of the pain in my lower back I have to sit down most of the time.").

The ALJ also engaged in sufficient supportability and consistency analyses of PA-C James' 2023 medical opinion. The 2023 opinion states, in relevant part, "[p]atient suffers from chronic lumbar spondylosis. He has constant low back pain [illegible] in his left leg, [illegible] decreased [range of movement] with pain, and is not able to perform any basic job duties due to his chronic condition." ECF No. 8-9 at 8. The ALJ found this assessment of Plaintiff's ability to perform job duties unpersuasive because it was inconsistent with claimant's "activities of daily living, including the ability to drive, perform light household chores, and prepare simple meals"; "assesse[d] no specific limitations"; and did not "describe the frequency or severity of the claimant's symptoms to support a preclusion from work." ECF No. 8-3 at 24. The ALJ adequately analyzed the supportability and consistency of the 2023 medical opinion because the ALJ noted that the opinion does not refer to any supporting objective or subjective medical evidence and specifically cited to contradictory evidence in the record. *E.g.*, *Andrew P.*, 2024 WL 4288063, at *3-4 (finding an ALJ properly assessed the supportability and consistency

where a medical opinion lacked explanation and was inconsistent with the treatment records);
*Kaitlyn R.* v. *Kijakazi*, Civil Action No. BAH-22-1010, 2023 WL 1419629, at *4 (D. Md. Jan.
31, 2023) (finding the supportability and consistency discussion "proper" where the ALJ noted
the provider "presented little to no explanations for the conclusions in her assessments" and cited
specific contradictory evidence within the record).

### C.    Subjective Statements

When evaluating a claimant's subjective symptoms, an ALJ is required to use the two-
step framework set forth in 20 C.F.R. §§ 404.1529, 416.929,  and Social Security Ruling 16-3p,
Titles II and XVI: Evaluation of Symptoms in Disability Claims (SSR 16-3p), 2016 WL
1119029 (SSA Mar. 16, 2016).  *Arakas* v. *Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th
Cir. 2020).  Under this framework, the ALJ must first "determine whether objective medical
evidence presents a 'medically determinable impairment' that could reasonably be expected to
produce the claimant's alleged symptoms."  *Id.* (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p,
2016 WL 1119029, at *3).  Second, the ALJ must "evaluate the intensity and persistence of those
symptoms to determine the extent to which the symptoms limit an individual's ability to perform
work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2; *see also Arakas*, 983 F.3d at 95;
20 C.F.R. §§ 404.1529(c); 416.929(c).  Importantly, "[a]t this step, objective evidence is *not*
required to find the claimant disabled."  *Arakas*, 983 F.3d at 95 (emphasis in original).

Consideration of the intensity, persistence, and limiting effects of the symptoms requires
the ALJ to examine the entire case record, including the objective medical evidence; the
claimant's statements about the intensity, persistence, and limiting effects of symptoms;
statements and other information provided by medical sources and other persons; and any other
relevant evidence in the case record.  20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2016
WL 1119029, at *4-7.  The ALJ may also consider factors such as daily activities; the location,

duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; and treatment, other than medication, received for relief of pain or other symptoms.  20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2016 WL 1119029, at *7.  A claimant is "entitled to rely exclusively on subjective evidence" to prove the severity and extent of their symptoms.  *Arakas*, 983 F.3d at 96 (quoting *Hines* v. *Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006)).  Thus, an ALJ commits "reversible error by improperly increasing Plaintiff's burden of proof by 'effectively requiring' [their] subjective symptoms to be 'supported by objective evidence.'" *Christina W.* v. *O'Malley*, Civil Action No. CDA-23-1325, 2024 WL 3819343, at *4 (D. Md. Aug. 14, 2024) (quoting *Arakas*, 983 F.3d at 96); *see also Stoker* v. *Saul*, 833 Fed. Appx. 383, 386 (4th Cir. 2020) (per curiam) (finding that "the ALJ's determination that [the claimant's] assertions about the severity and limiting effects of his pain were less credible merely because no objective medical evidence supported them, was improper").  While the ALJ is not required to accept the claimant's subjective evidence that is inconsistent with other evidence in the record, the ALJ must consider all of the available evidence and cannot discredit a claimant's subjective evidence simply because it is not confirmed by objective medical evidence.  *Craig*, 76 F.3d at 595 (citing 20 C.F.R. §§ 404.1529(c)(2)-(3), 416.929(c)(2)-(3)).

Here, Plaintiff argues that the ALJ applied an improper standard in evaluating his subjective complaints by erroneously requiring him to prove the "type and degree" of his subjective complaints by objective medical evidence.  ECF No. 10 at 25.  Plaintiff further alleges the ALJ failed to specifically identify any medical evidence or statements that were inconsistent with Plaintiff's account of his symptoms.  *Id*. at 27.  The Commissioner contends that the ALJ properly employed the two-step analysis of subjective complaints and adequately addressed

Plaintiff's impairments by limiting him to a significantly restricted range of light work.  ECF No. 13 at 21–22.  The Commissioner further contends that an ALJ is not required to account for limitations "merely based on a claimant's diagnosed impairments" because "an impairment itself is not necessarily disabling."  *Id.* at 22.

At the first step of the analysis, the ALJ determined that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  ECF No. 8-3 at 21.  At the second step, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  *Id.*  The record details, and the ALJ summarized, two primary complaints impacting Plaintiff's ability to work: (1) muscular skeletal pain effecting his back, left shoulder, left knee, and feet causing difficulty standing; and (2) mental health and cognitive complaints, including anxiety, depression, and deficits in memory, concentration, task completion, and social interactions.  ECF Nos. 8-3 at 21, 37; 8-4 at 4; 8-7 at 11, 67.  In assessing Plaintiff's symptoms related to these complaints, the ALJ cited Plaintiff's hearing testimony, application for disability benefits, and medical records, including a 2019 x-ray and examination of his back, a 2022 MRI, 2022 pain management records, a 2023 neurological examination, high school special education reports, a 2021 consultative psychological examination, primary care records, state agency mental health and medical consultations, and third-party function reports authored by Plaintiff's mother and father.[6]  ECF No. 8-3 at 21–25.  Nevertheless, the ALJ did not adequately explain how Plaintiff's statements

---

[6] "MRI" is an abbreviation for magnetic resonance imaging, which is "a noninvasive diagnostic technique that produces computerized images of internal body tissues and is based on nuclear magnetic resonance of atoms within the body induced by the application of radio waves."  "MRI." Merriam-Webster.com Dictionary, Merriam-Webster, https://perma.cc/CJG8-F9ME (last accessed Nov. 4, 2025); "Magnetic resonance imaging." Merriam-Webster.com Dictionary, Merriam-Webster, https://perma.cc/XJ45-8QL5 (last accessed Nov. 4, 2025).

about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence and other evidence in the record.

In *Willis F.* v. *Kijakazi*, this Court found that the ALJ's opinion did not provide a bridge between the evidence and the ALJ's conclusion because the ALJ did not explain how the objective medical evidence "either undermine[d] or [was] entitled to more weight than Plaintiff's continued reports of pain." Civil Action No. AAQ-23-318, 2023 WL 8437229, at *2–3 (D. Md. Dec. 5, 2023); *accord Candace W.* v. *Dudek*, Civil Action No. ADC-24-2124, 2025 WL 885998, at *4 (D. Md. Mar. 21, 2025); *Kevin T.* v. *O'Malley*, Civil Action No. CDA-23-312, 2023 WL 8993664, at *4 (D. Md. Dec. 28, 2023); *Towanna G.* v. *Kijakazi*, Civil Action No. BAH-21-1711, 2022 WL 4017417, at *4 (D. Md. Sept. 2, 2022). Similarly, the ALJ in this case did not "build an accurate and logical bridge" between the evidence and his conclusion. *Stoker*, 833 Fed. Appx. at 386 (quoting *Brown* v. *Commissioner Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017)). The ALJ noted that Plaintiff "alleges an inability to work based primarily upon pain and dysfunction in the low back, radiating to the lower extremity" which "interfere with [Plaintiff's] ability to stand for long periods, sit for long periods, dress, and carry heavy objects." ECF No. 8-3 at 21. The ALJ further stated Plaintiff "alleges disordered mood with irritability and deficits in memory, concentration, task[] completion, and social interactions." *Id*. The record reflects that Plaintiff reported worsening pain, the severity of which required him to lay down for 8 out of 15 hours of the day, and an inability to walk more than 10 yards, lift more than 10 pounds, stand for longer than five minutes, or sit for longer than an hour and a half. ECF No. 8-3 at 40–41, 51–52. As in *Willis F.* and other cited cases, the ALJ provided no explanation of why Plaintiff's allegations of pain and limitations were entitled to less weight than other evidence in the record. 2023 WL 8437229, at *3; *see also Towanna G.*, 2022 WL 4017417, at *4 (reversing and remanding where the ALJ "failed to effectively explain *how* the objective

14

medical evidence contradicts Plaintiff's subjective complaints") (emphasis in original).  For

these reasons, the ALJ's analysis of Plaintiff's subjective statements is not supported by

substantial evidence, which precludes meaningful review and requires reversal.

### D.    Residual Functional Capacity

Plaintiff argues that substantial evidence does not support the ALJ's residual functional

capacity finding.  ECF No. 10 at 10–21.  "When an individual is not engaging in substantial

gainful activity and a determination [regarding eligibility for benefits] . . . cannot be made on the

basis of medical factors alone . . . the sequential evaluation process generally must continue with

an identification of the individual's functional limitations . . . and an assessment of his or her

remaining capacities for work-related activities."  SSR 96-8p, at 61 Fed. Reg. 34,475.  The latter

part of this analysis is expressed as a claimant's residual functional capacity, which is the most

the claimant can do in a work setting on a regular and continuing basis despite any impairments

or related symptoms.  *Id.*; 20 C.F.R. §§ 404.1545, 416.945; *see also* I.B, *supra*.

A claimant's residual functional capacity is determined using a two-step process.  The

ALJ must first "identify the individual's functional limitations . . . and assess his or her work-

related abilities on a function-by-function basis."  SSR 96-8p, at 61 Fed. Reg. 34,475.  "The

function-by-function approach asks the ALJ to consider a claimant's specific 'exertional and

nonexertional functions.'"[7]  *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018)

(quoting SSR 96-8p, at 61 Fed. Reg. 34,476).  The ALJ then expresses a claimant's residual

functional capacity "in terms of the exertional levels of work," such as "sedentary, light,

---

[7]  "Exertional capacity . . . defines the individual's remaining abilities to perform each of
seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling."
Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in
Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996).  "Nonexertional capacity
considers all work-related limitations and restrictions that do not depend on an individual's
physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking,
understanding and remembering instructions, and tolerance of temperature extremes.  *Id.*

medium, heavy, and very heavy." SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R.

§ 404.1567 (defining the physical exertion requirements of each exertional level of work); 20

C.F.R. § 416.967 (same).

  While the SSA guidelines require a "function-by-function" analysis to determine a

claimant's residual functional capacity, the Fourth Circuit has held that this analysis does not

need to be explicit. *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand when the

ALJ does not perform an explicit function-by-function analysis"). Instead, the key consideration

is whether the ALJ identified the evidence relied upon in determining the claimant's residual

functional capacity and built "an accurate and logical bridge from the evidence to that

conclusion." *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted). A proper

residual functional capacity analysis "has three components: (1) evidence, (2) logical

explanation, and (3) conclusion." *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as

amended* (Feb. 22, 2019). The second component of this analysis, "the ALJ's logical

explanation, is just as important as the other two." *Id.*; *see also* SSR 96-8p, 61 Fed. Reg. at

34,478 ("The [residual functional capacity] assessment must include a narrative discussion

describing how the evidence supports each conclusion, citing specific medical facts . . . and

nonmedical evidence."). Remand may be appropriate "where an ALJ fails to assess a claimant's

capacity to perform relevant functions, despite contradictory evidence in the record," *Mascio*,

780 F.3d at 636 (internal quotation marks and citation omitted), or where the ALJ's residual

functional capacity analysis "contains too little logical explanation for . . . meaningful appellate

review," *Thomas*, 916 F.3d at 312.

  Here, the ALJ determined in the residual functional capacity assessment that Plaintiff

could perform light work. ECF No. 8-3 at 21. Among other things, light work "requires a good

deal of walking or standing."[8]  20 C.F.R. §§ 404.1567(b), 416.967(b).  To reach this finding, the

ALJ assessed Plaintiff's symptoms, as well as objective medical evidence, medical opinions, and

prior administrative medical findings.  ECF No. 8-3 at 21.  The ALJ identified several exceptions

to Plaintiff's capacity for light work and concluded that Plaintiff:

> is limited to standing/walking for 4 hours in an 8-hour workday. . . .
> He is limited to simple, routine, and repetitive tasks for periods of
> two hours at a time before needing a break . . . . He is unable to
> perform high-quota production rate pace jobs where the workers
> must meet strict, hourly quotas.

*Id.*  The ALJ did not, however, reference the residual functional capacity regulations or the

relevant Social Security Ruling or provide an assessment of the seven strength demands of

exertional capacity in relation to each of Plaintiff's work functions.  *Id.* at 21–25.  The ALJ did

not explain how he reached the conclusion that Plaintiff is capable of light work, including

sitting for 4 hours in an 8-hour work day, and lifting up to 20 pounds, when Plaintiff testified that

he is unable to sit for more than an hour and a half at a time, cannot stand for more than 5 to 10

minutes, and cannot lift more than 10 pounds.  ECF No. 8-3 at 5254.  Thus, the ALJ "fail[ed] to

assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the

record."  *Mascio*, 780 F.3d at 636 (internal quotation marks and citation omitted).  Because the

ALJ's discussion does not describe how the evidence supports the residual functional capacity

finding, it "contains too little logical explanation for . . . meaningful appellate review."  *Thomas*,

---

[8]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a
job is in this category when it requires a good deal of walking or standing, or when it involves
sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered
capable of performing a full or wide range of light work, you must have the ability to do
substantially all of these activities.  If someone can do light work, we determine that he or she
can also do sedentary work, unless there are additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time."  §§ 404.1567(b), 416.967(b); *see also* Titles
II & XVI: Determining Capability to Do Other Work—the Med.-Vocational Rules of Appendix
2, SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *5-6.

916 F.3d at 312; *see also Elijah H.* v. *O'Malley*, Civil Action No. SAG-23-1786, 2024 WL 1833608, at *4 (D. Md. Apr. 26, 2024) (finding a lack of explanation constitutes reversible error); *Christina W.*, 2024 WL 3819343, at *5 (same).

### E.    Vocational Expert Testimony

At step five of the sequential evaluation process, the ALJ determines whether sufficient work exists for the claimant in the national economy.  In doing so, an ALJ "'rel[ies] primarily'" on the Dictionary of Occupational Titles (the Dictionary) but "'may also use' a vocational expert to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of positions in the national economy."[9]  *Pearson* v. *Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (alteration in original) (quoting Soc. Sec. Admin., *Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, Social Security Ruling 00–4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (SSR 00-4p)). A vocational expert's occupational evidence should generally be consistent with the Dictionary's occupational information.  SSR 00-4p, 2000 WL 1898704, at *2.  When faced with a conflict between the vocational expert and the Dictionary, the ALJ "must elicit a reasonable explanation for the conflict before relying on the [vocational expert's] evidence to support . . . [a] decision about whether the claimant is disabled."  *Id*.  Thus, as part of the ALJ's "duty to fully develop the record," during the hearing, the ALJ must inquire about the inconsistency and resolve any apparent conflict by determining if the vocational expert's explanation is reasonable and

---

[9]  "The Dictionary of Occupational Titles, and its companion, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations."  *Pearson* v. *Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015) (citing U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991); U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (1993)) (italics removed).

provides a basis for relying on it instead of the Dictionary. *Id.*; *see also Pearson*, 810 F.3d at 210 ("An ALJ has not fully developed the record if it contains an unresolved conflict between the expert's testimony and the Dictionary. Nor has the ALJ fulfilled this duty if [they] ignore[] an apparent conflict because the expert testified that no conflict existed.") (italics removed).

Consistent with these authorities, this Court has found that an ALJ's decision was supported by substantial evidence when the ALJ identified the apparent conflict and explained their reliance on the vocational expert's testimony over the occupational information in the Dictionary. *E.g.*, *Michael H.* v. *Kijakazi*, Civil Action No. ADC-21-725, 2022 WL 170644, at *4 (D. Md. Jan. 18, 2022). On the other hand, this Court has also found that an ALJ's decision was not supported by substantial evidence when the ALJ failed to elicit an explanation of the apparent conflict between the vocational expert and the Dictionary regarding the duration the claimant could stand or walk and did not explain the basis or cite any evidence in support of the conclusion that the vocational expert and the Dictionary were consistent. *Tyree P.* v. *Kijakazi*, Civil Action No. TJS-22-0296, 2022 WL 16553354, at *3 (D. Md. Oct. 31, 2022).

Here, the ALJ determined that Plaintiff's ability to perform the full range of light work "has been impeded by additional limitations," including being "limited to standing/walking for 4 hours in an 8-hour workday." ECF No. 8-3 at 21, 26. The ALJ asked the vocational expert if jobs exist in the national economy for an individual with the claimant's age, education, and residual functional capacity, and in response, the vocational expert identified positions such as router (Dictionary: 222.587-038), inspector (Dictionary: 559.687-074), and marker (Dictionary: 209.587-034). *Id.* at 26. All three of these positions were classified as "light, unskilled work." *Id.* The ALJ determined that "the vocational expert's testimony was consistent with the information contained in the [Dictionary], such as limited standing and walking." *Id.* The vocational expert's hearing testimony, however, differs from the ALJ's summary. Importantly,

the vocational expert testified that her evaluation was not entirely consistent with the Dictionary. *Id.* at 62 ("Q: Is your testimony consistent with the [Dictionary]?  A: Except for the standing and walking at four hours as previously noted, yes.").  Yet, the ALJ did not address this apparent conflict, which is precisely the error that formed the basis of the Fourth Circuit's reversal in *Pearson*, 810 F.3d at 208-210.  There, the vocational expert testified that the claimant could perform light work with a sit/stand option such as a "motel cleaner (Dictionary 323.687–014), cashier II (Dictionary 211.462–010), and bench press operator (Dictionary 690.685–014)."  *Id.* at 206 (italics removed).  The Dictionary, however, listed as a requirement of all three of these occupations "*frequent* reaching," which it defined as "'[e]xtending hand(s) and arm(s) in any direction.'"  *Id.* at 210 (emphasis and alteration in original) (quoting *App. C, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* C–3). The ALJ had found, however, that the claimant's "nondominant arm could only occasionally reach upward."  *Id.*  The Fourth Circuit reversed because the ALJ did not address the apparent conflict between the vocational expert's testimony and the Dictionary, holding that "an ALJ has not fulfilled [their] affirmative duty merely because the [vocational expert] responds 'yes' when asked if [their] testimony is consistent with the [Dictionary]."  *Id.* at 208 (second and fourth alteration in original) (internal quotations and citation omitted) (collecting cases).

A similar conflict was apparent here.  Light work (including the positions the vocational expert identified) requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  Titles II & XVI: Determining Capability to Do Other Work—the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *6.  Although the vocational expert stated that her testimony was "consistent with the [Dictionary]," "[e]xcept for the standing and walking at four hours," ECF No. 8-3 at 62, the ALJ did not address the apparent conflict among the vocational expert's opinion, the definition of light work, the

Dictionary's occupational information, legal authorities, or the ALJ's finding that Plaintiff could only stand or walk for four hours of an eight-hour workday.

In *Michael H.*, the ALJ identified and addressed the apparent conflict between the vocational expert's testimony and the Dictionary by posing a hypothetical to the vocational expert and explaining that vocational expert had reduced the percentage of such jobs that exist in the national economy by 20 percent "to accommodate for the limitations regarding reaching overhead." 2022 WL 170644, at *4 (internal quotations omitted). Unlike in *Michael H.*, here, the ALJ did not ask what impact, if any, claimant's walking/standing limitation would have on his ability to perform light work or whether the vocational expert had reduced the number of available jobs in the national economy based on this limitation. *E.g.*, *Lessie B.* v. *Dudek*, No. 1:23CV1020, 2025 WL 777195, at *7 (M.D.N.C. Mar. 11, 2025) (concluding that any apparent conflict regarding the ALJ's findings that the claimant could stand/walk four hours and day and still perform light work was resolved through questioning of the vocational expert about claimant's standing/walking limitation); *Geer* v. *Kijakazi*, No. CV 0:21-243-PJG, 2022 WL 278459, at *6 (D.S.C. Jan. 31, 2022) (affirming the decision of the ALJ where "the ALJ specifically asked if the light work jobs would still be available if the standing and walking were reduced to four hours, and the vocational expert reduced the availability of two of the jobs, eliminated one job, and provided a third job in its place"). The ALJ's failure to develop the record in this manner renders his decision unsupported by substantial evidence. *E.g.*, *Fogle* v. *Colvin*, No. 3:16-CV-32-FDW-DSC, 2016 WL 7322789, at *4 (W.D.N.C. Dec. 15, 2016) (concluding that the ALJ erred in relying on the vocational expert's testimony when "the ALJ failed to resolve whether the jobs identified by the vocational expert could require standing and/or walking in excess of four hours per day"); *accord Edwards* v. *Berryhill*, No. 2:18CV121, 2019 WL 1919167, at *4 (E.D. Va. Apr. 29, 2019); *West* v. *Berryhill*, No. CV 1:17-1265-JMC-

SVH, 2018 WL 1009254, at *14 (D.S.C. Jan. 16, 2018), *report and recommendation adopted*, No. 1:17-CV-01265-JMC, 2018 WL 953336 (D.S.C. Feb. 20, 2018).

## III.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion pursuant to sentence four of 42 U.S.C. § 405(g).  In remanding for further explanation and analysis, the Court offers no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.  A separate Order follows.


Date:  November 4, 2025                                _____/s/_____
                                                                        Erin Aslan
                                                                        United States Magistrate Judge